# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | |
|---|---|
| PLAINTIFF<br><br>Jonah A. Butler,<br><br>-v-<br><br>DEFENDANTS<br><br>Nicholas P. Siembor and<br>Armbruster Moving & Storage, Inc., | Case No.: 8:25-cv-12756-SAC<br><br>**MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY THE SCHEDULING ORDER** |

Plaintiff Jonah A. Butler, by and through his undersigned attorneys, moves for leave to amend his complaint and to modify the scheduling order. In support of this motion, Plaintiff would show the following:

## FACTUAL BACKGROUND

This case arises out of a motor vehicle accident that occurred on August 6, 2025, on US-211 in Greenwood County, South Carolina. The Plaintiff was driving a 2024 Chevrolet. Nicholas Siembor was driving a tractor-trailer in legal possession of Armbruster Moving & Storage, Inc. The vehicles collided on US-211 when Defendant Siembor attempted to make a right-hand turn onto Willard Lane from the left-hand lane of US-211. The parties have engaged in discovery and have completed Plaintiff's deposition, Defendants' depositions, witness depositions, and are presently engaged in expert discovery.

## LEGAL STANDARD

After the deadlines provided by the scheduling order have passed, the good cause standard of Fed. R. Civ. P. 16 must be satisfied to justify leave to amend the pleadings. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Once good cause has been established, a party

may amend a pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and quotation marks omitted). Where at least some of the evidence needed by Plaintiff to prove its new claims did not surface until after the amendment deadline, good cause exists under Fed. R. Civ. P. 16. *Felcor Lodging Ltd. P'ship v. Kingston Concierge, LLC*, No. 4:09-CV-2843-TLW-TER, 2010 WL 11475232, at *2 (D.S.C. May 18, 2010) (citing *In re Lone Star Industries, Inc. Concrete R.R. Cross Ties Litigation*, Nos. 93-1505, 93-1506, 1994 WL 118475 (4th Cir. Apr. 7, 1994)). Additionally, Courts in the Fourth Circuit have found that when a party identifies new facts learned in discovery which will be incorporated into the amended complaint, good cause exists. *See Amaya v. DGS Constr., LLC,* 326 F.R.D. 439, 451 (D. Md. 2018); *Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 576–77 (4th Cir. 2005); *Stewart v. Coyne Textile Servs.,* 212 F.R.D. 494, 497 (S.D.W. Va. 2003).

## ANALYSIS

Here, discovery has revealed that the action is missing an additional party who may be liable in whole or in part to Plaintiff. To understand why, a timeline is helpful:

| **Discovery Event:** | **Information Revealed:** |
|---|---|
| October 22, 2025 – Defendants' Answer | Armbruster admits to course and scope of employment for Siembor. Answer, Dkt. 5, P. 2.<br>Armbruster admits to agency on behalf of Mayflower. Answer, Dkt. 5, P. 5. |
| October 29, 2025 – Defendants' Local Civ. Rule 26.01 (D.S.C.) Responses | Armbruster states Defendants are properly identified. DFs 26.01 Responses, Dkt. 8, P. F.<br>Armbruster states no other party is wholly or partially liable to Armbruster or Plaintiff. DFs 26.01 Responses, Dkt. 8, P. G. |

| | |
|---|---|
| December 8, 2025 – Armbruster Provides Initial Discovery Responses | Armbruster states that it put Siembor on temporary leave due to the incident. DF Responses to Initial Discovery, Exhibit 1, Interrogatory 15. |
| March 26, 2026 – Armbruster Provides Supplemental Discovery Responses | Armbruster does not identify any lease between itself and Mayflower. DF Supplemental Responses to Initial Discovery, Exhibit 2, RFP 22. |
| July 2, 2026 – Motion to Amend Pleadings Deadline Expires | |
| August 7, 2026 – Armbruster 30(b)(6) | Armbruster testifies that Siembor was not operating under Armbruster's motor-carrier authority, but was hauling a Mayflower interstate shipment under Mayflower's authority; that Armbruster is Mayflower's agent; that "Anything that is interstate is Mayflower"; that Mayflower separately qualifies and trains Armbruster drivers; and that a previously undisclosed lease exists between Armbruster and Mayflower defining their relationship. Armbruster further testifies that Mayflower controls the shared Samsara system, participates in HOS auditing, maintains safety authority over drivers operating under its authority, received notice of this collision, and suspended Siembor following the collision. Armbruster 30(b)(6) Dep., pp. 14–22, 35–37, 46–47, 60–61, 88–92. |

**1. Good Cause Exists to Modify the Scheduling Order Under Fed. R. Civ. P. 16(b)(4).**

Good cause exists here under Fed. R. Civ. P. 16(b)(4) because Plaintiff diligently pursued discovery concerning the identity and respective roles of the entities responsible for the interstate transportation at issue, and that discovery materially developed the factual basis for joining Mayflower only after the deadline to amend the pleadings had passed. Plaintiff does not contend that Mayflower's identity was unknown before the amendment deadline. Rather, discovery completed after that deadline materially developed Mayflower's direct role in the qualification, training, monitoring, and safety oversight of Siembor and supplied the substantial factual basis for claims against Mayflower itself.

Defendant Armbruster Moving & Storage, Inc.'s Answer admitted both that Siembor was acting within the course and scope of his employment with Armbruster and that Armbruster was

acting as an agent of Mayflower. Additionally, when asked to identify all training received for the operation of commercial motor vehicles, Defendant Siembor stated in his interrogatory answers that all of his CMV training was completed through Armbruster Moving & Storage, Inc. and its certified trainer, while omitting any reference to training provided by Mayflower. Those admissions reasonably focused Plaintiff's initial inquiry upon Armbruster as the employer responsible for Siembor's conduct. Defendants' subsequent Local Civ. Rule 26.01 (D.S.C.) interrogatory responses reinforced that understanding. Defendants represented that they were properly identified and, when asked whether another person or legal entity was liable in whole or in part to Defendants or Plaintiff, responded that they made "no such claim at this time."

Plaintiff nevertheless pursued discovery directed to the underlying transportation arrangement. Plaintiff specifically requested "[c]opies of all leases, rental, or other agreements regarding the commercial motor vehicle involved in the Crash." Armbruster initially responded that it would supplement. On March 26, 2026, more than three months before the amendment deadline, Armbruster served a supplemental response identifying only the tractor and trailer titles. It did not identify or produce the agreement between Armbruster and Mayflower that its corporate representative subsequently testified governed their relationship. That agreement remains unproduced.

The significance of Mayflower's role became materially clearer during Armbruster's August 7, 2026 30(b)(6) deposition, approximately five weeks after the July 2, 2026 amendment deadline. Armbruster testified that Siembor was hauling a Mayflower interstate shipment under Mayflower's operating authority and explained the entities' respective responsibilities directly: "Anything that is interstate is Mayflower. Anything that is local or intrastate is Armbruster." Exh. 1, Armbruster 30(b)(6) Dep., pp. 14:13-16:3. Armbruster further testified that Mayflower

separately qualifies Armbruster drivers, maintains driver-qualification information, imposes its own training requirements, and must approve drivers before they may perform Mayflower work. *Id*. at 16:4-17:10.

The deposition further revealed that Mayflower's involvement extended substantially beyond providing a USDOT number or operating authority. Armbruster testified that Mayflower separately qualifies Armbruster drivers and maintains driver-qualification information; that Mayflower provides driver training; that a previously unproduced lease exists between Armbruster and Mayflower defining their relationship; that Mayflower controls the Samsara system used in the interstate operation; and that Mayflower participates in auditing drivers' hours-of-service records. *Id.* at 16-22, 35-37, 46-47, 88-89. This information contradicted earlier responses to written discovery by both Defendants.

Most importantly, that testimony established Mayflower's direct safety authority over Siembor in connection with the collision at issue. Armbruster's earlier interrogatory response stated that Armbruster placed Siembor on temporary leave following the incident. At the 30(b)(6) deposition, however, Armbruster testified that the collision was reported to Mayflower's safety department and that Mayflower suspended Siembor from hauling Mayflower shipments. *Id*. at 90:7–91:5. When asked who imposed that suspension, the corporate representative answered, “Mayflower did,” and identified “Mayflower safety” as involved in that decision. *Id.*

These disclosures materially changed the factual picture. Before the amendment deadline, Plaintiff knew Mayflower existed and knew Armbruster acted as Mayflower's agent. What the subsequent 30(b)(6) testimony established was that the particular interstate shipment at issue was actually being transported under Mayflower's federal motor-carrier authority and that Mayflower itself exercised exclusive interstate driver qualification, training, monitoring, safety, and

disciplinary functions over Siembor while he was operating under that authority with regard to this specific trip and incident.

Plaintiff's post-deadline request to amend thus does not arise from Plaintiff's own undue delay. Plaintiff sought documents bearing on the transportation arrangement months before the amendment deadline, received supplemental discovery that did not identify the agreement later revealed at deposition, pursued corporate testimony concerning the relationship, and moved to amend after that testimony supplied a factual basis for claims against Mayflower and after Plaintiff attempted to obtain Defendants' consent to the amendment.

**2. Leave to Amend Should Be Granted Under Fed. R. Civ. P. 15(a)(2).**

Once Fed. R. Civ. P. 16(b)(4) is satisfied, Fed. R. Civ. P. 15(a)(2) directs that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit recognizes prejudice, bad faith, and futility as the principal grounds for denying leave. *Nourison*, 535 F.3d at 298. None warrants denial here.

The proposed amendment will not unfairly prejudice Defendants or Mayflower. Plaintiff seeks to add Mayflower based on facts developed through discovery concerning Mayflower's role in the interstate transportation at issue, and the proposed claims remain within the applicable limitations period. Nor is there any evidence of bad faith. Plaintiff pursued discovery concerning the relationship between Armbruster and Mayflower, yet Armbruster still has not produced the agreement its corporate representative testified governs that relationship. That agreement is directly relevant to the allocation of operational and safety responsibilities between the two entities. Finally, the proposed amendment is not futile. Armbruster's own corporate testimony provides a factual basis for Plaintiff's allegations that Mayflower exercised independent authority over the qualification, training, monitoring, and safety of drivers performing interstate

transportation under Mayflower's authority, including Siembor. Those allegations, if proven, support liability against Mayflower and are sufficient to permit the proposed amendment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find good cause under Rule 16(b)(4) and grant Plaintiff leave under Rule 15(a)(2) to file Exh. 2, Proposed Amended Complaint, adding Mayflower Transit, LLC as a defendant.

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

*s/ Cooper Klaasmeyer*
JAMES G. BIGGART II, ESQ.
Federal ID: 14195
COOPER KLAASMEYER, ESQ.
Federal ID: 14272
4401 Belle Oaks Drive, Suite 300
North Charleston, SC, 29405
Telephone: (843) 973- 5186
Fax: (843) 947- 6113
Cooper.klaasmeyer@forthepeople.com
**Attorneys for the Plaintiff**

November 13, 2026
Charleston, South Carolina