**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**GREENWOOD DIVISION**

| | | |
|---|---|---|
| **Jonah A. Butler,** | ) | **Case No.: 8:25-cv-12756-SAC** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY THE SCHEDULING ORDER** |
| **v.** | ) | |
| | ) | |
| **Nicholas P. Siembor and Armbruster Moving & Storage, Inc.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMES NOW** Defendants Nicholas P. Siembor and Armbruster Moving & Storage, Inc. (hereinafter "Armbruster"), by and through their undersigned counsel, who respectfully submits this Memorandum in Opposition to Plaintiff's Motion for Leave to Amend Complaint and to Modify the Scheduling Order. Plaintiff's motion to add Mayflower Transit, LLC (hereinafter "Mayflower") as a defendant, at this late stage of litigation, should be denied because Plaintiff cannot establish a good cause basis to amend the Scheduling Order as required by FEDERAL RULES OF CIVIL PROCEDURE 16(b)(4), and because the proposed amendment would substantially prejudice Defendants by introducing a new party and new theories of liability after the case has progressed through substantial discovery and is being prepared for trial. Defendants would show as follows:

**STATEMENT OF FACTS**

This action arises out of a motor vehicle accident that occurred on August 6, 2025, on US-221 in Greenwood County, South Carolina. Defendant Nicholas Siembor, driving in the course and scope of his employment for Armbruster, was making a right-hand turn onto Willard

Road when Plaintiff, driving far in excess of the speed limit, attempted to squeeze by Defendant using the emergency lane and struck Defendant's turning tractor. At the time of the underlying accident, Defendant Siembor was operating a tractor bearing Mayflower's DOT number and pulling a trailer with Mayflower's logo painted conspicuously on its side.




Plaintiff filed his Complaint with this Court on September 30, 2025. Defendants Answered on October 22, 2025. There, Defendant Armbruster admitted that Defendant Siembor was an employee of Armbruster and was operating within the course and scope of that employment at all times relevant (Dkt. No. 5, P. 2). Defendants further stated that they were conducting business as an agent of Mayflower and operating under Mayflower's DOT number at the time of the underlying accident. (Dkt. No. 5, P. 5).

Defendants answered Plaintiff's initial written discovery requests on February 23, 2026. Along with those Answers, Defendants produced multiple documents as evidence of their relationship with Mayflower. For example, Defendants produced a "status form" confirming that

Defendant Siembor was properly qualified by UniGroup, Inc. (hereinafter "UniGroup"), the parent company to Mayflower, to operate as Mayflower's agent (**Exhibit A**). Further, Defendants produced the bill of lading, setting forth the load Defendant Siembor was hauling and highlighting that he was hauling household goods as an agent of Mayflower. (**Exhibit B**). Defendants supplemented their written discovery responses on March 26, 2026. With those Supplemental Responses, Defendants produced additional documents outlining Unigroup and Mayflower's involvement in the post-accident reporting and investigation. Specifically, Defendants produced a copy of the post-accident report to Unigroup (**Exhibit C**), and an email exchange between representatives of Unigroup regarding the drug and alcohol testing of Defendant Siembor (**Exhibit D**).

On June 23, 2026, Defendant Siembor sat for a discovery deposition. (**Exhibit E**). There, Defendant Siembor added even further context to the relationship between Defendant Armbruster and Mayflower. Again, he testified to the agency relationship and acknowledged that the only motor carrier he drove for was Mayflower. (Siembor Dep. 9:11–23; 15:10–12). As for Defendant Siembor's training, he noted that safety standards are passed down from Mayflower to Defendant Armbruster and administered through training performed by Defendant Armbruster. (*Id.* at 89:9–17). Specifically, Clay Armbruster, owner of Defendant Armbruster, administered all of Defendant Siembor's in person training (*Id.*). Defendant was further required to watch online training videos, which were made available through Mayflower. (*Id.* at 96:23–97:3). As to the video capturing the underlying incident, Defendant Siembor testified that Mayflower was the custodian of that video. (*Id.* at 88:17–89:2). Finally, Defendant Siembor agreed that during his brief suspension following the underlying incident, he was not permitted to drive interstate under Mayflower's DOT number. (*Id.* at 85:7–19).

Defendant Armbruster and Mayflower are contractually bound by a written agreement governing their agency relationship. The most recent version of the contract was executed on April 8, 2013 and sets forth each company's obligations to the other. Importantly, the agreement includes an indemnification provision, wherein Defendant Armbruster agrees to indemnify Mayflower against and hold harmless from claims against either party arising out of Armbruster's performance of the agreement.

> M. The Agent will indemnify the Carrier against, hold it harmless from and promptly reimburse it for, any and all payments of monies (fines, damages, settlement amounts, expenses,
>
> 6
>
> 34477v2
>
> Form BD-008, Revised 5/06/2008
>
> attorneys' fees, court costs, judgments and the like), by reason of any claim, demand, tax, penalty or judicial or administrative investigation or proceeding arising from any actual or claimed occurrence involving the Agent or any act, omission or obligation of the Agent or anyone associated or affiliated with the Agent or acting on behalf of the Agent. At the election of the Carrier, the Agent shall also defend the Carrier against the same. The Carrier shall have the right, through counsel of its choice, to control any matter to the extent it could directly or indirectly affect the Carrier.

On March 18, 2026, Judge Hendricks entered a Consent Amended Conference and Scheduling Order (Dkt. No. 15) in accordance with the parties' Joint Rule 26(f) Report. (Dkt. No. 11). Pursuant to the Court's Order, the deadline to join other parties and amend the pleadings pursuant to FED. R. CIV. P. 16(b)(3)(A) was July 2, 2026. Plaintiff failed to move to add another party or amend its pleadings within the time period set forth in the Court's Order. Instead, Plaintiff waited four hundred and ten (410) days after the filing of his Complaint and one

hundred and thirty-five (135) days after the deadline to join other parties ran to file a motion to amend his Complaint and add Mayflower to this action. Extensive discovery has been completed to date including the exchange of written discovery, production of hundreds of pages of documents, disclosure of the video capturing the underlying accident, the depositions of seven (7) fact witnesses, Defendants' identification of three (3) expert witnesses, and the depositions of two (2) expert witnesses. The parties mediated this case on August 13, 2026 in Columbia, South Carolina. This matter is eligible for trial on March 24, 2027.

## APPLICABLE LAW

A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. *Jordan v. E.I. du Pont de Nemours & Co.*, 867 F. Supp. 1238, 1250 (D.S.C. 1994). A scheduling Order may by modified only for good cause and with the Court's consent. Rule 16(b)(4), FRCP. Once the deadline proscribed by a scheduling order has passed, a party seeking to amend its pleadings must first satisfy FED. R. CIV. P. 16(b)(4)'s good cause requirement before the Court considers the more liberal amendment policy under FED. R. CIV. P. 15(a)(2). *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). The "good cause" standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence. *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (quoting Federal Practice and Procedure Civ.3d § 1522.2 (3d ed. 2010)). Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997). Rule 16 was drafted to prevent parties from disregarding the agreed-upon course of litigation. *Id.* The Rule assures the court and the parties that at some point both the parties and the pleadings will be fixed. *Id.*

## DISCUSSION

### I. Plaintiff had sufficient notice of Mayflower's involvement early in this litigation.

A motion to amend the Complaint should be made as soon as the necessity for altering the pleadings becomes apparent. *Id.* A plaintiff is the master of the Complaint and has the option of naming only those parties a plaintiff chooses to sue. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91, 126 S. Ct. 606, 614, 163 L. Ed. 2d 415 (2005) (quoting J. Moore et al., Moore's Federal Practice § 107.14(2)(c), p. 107-67 (3d ed. 2005)).

#### i. Plaintiff knew a claim against Mayflower could exist when Armbruster answered his Complaint.

In Defendants Answer to Plaintiff's Complaint, filed October 22, 2025, Defendants admitted that they were operating as an agent of Mayflower and operating under Mayflower's DOT authority at the time of the underlying accident. (Dkt. No. 5, P. 5). *See Fernander v. Thigpen*, 278 S.C. 140, 144, 293 S.E.2d 424,426 (1982) (holding that the test to determine agency is whether the purported principal has the right to control the conduct of his alleged agent). At that moment, it became apparent to Plaintiff that Mayflower was a potential party. Plaintiff did not need to possess every detail concerning the precise nature and extent of Mayflower's involvement before seeking to add Mayflower as a party. Rather, if Mayflower were to have been brought into the suit in October of 2025, Plaintiff could have used the following months to engage in relevant and timely discovery on the relationship between the two companies. Instead, Plaintiff delayed.

#### ii. Plaintiff had more than enough information to pursue Mayflower prior to the Scheduling Order's deadline to amend the pleadings.

Notwithstanding the notice provided in Defendants Answer, even if the Court were to assume that Plaintiff needed additional details prior to adding Mayflower as a party to this case,

he had those relevant details prior to the running of the Court's deadline. Plaintiff's argument hinges on the fact that he did not have sufficient information that would have allowed him to add Mayflower to this suit prior to the expiration of the deadline to amend on July 2, 2026. As support, Plaintiff points to the deposition of Armbruster's corporate designee pursuant to FED. R. CIV. P. 30(b)(6) on August 7, 2026 as the watershed moment at which Mayflower's involvement was revealed. Specifically, Plaintiff alleges that the following were set forth for the *first time* at the Armbruster 30(b)(6) deposition: (1) Defendant Siembor was hauling a load under Mayflower's DOT authority; (2) Mayflower has involvement in the qualification and safety training of Armbruster drivers; (3) Mayflower has access to dash camera telematics system utilized by Armbruster drivers; (4) Mayflower received notice of the collision; and (5) Mayflower suspended Siembor from operating under its DOT authority following the accident.

Plaintiff's timeline is factually incomplete and misleading. Plaintiff had all of this information available to him prior to the expiration of the amendment deadline. The fact that Defendant Siembor was hauling a load under Mayflower's DOT authority was evident by the fact that its DOT number was painted on the side of his tractor, that Defendants Answer admitted this fact, and that Defendant produced a Bill of Lading (**Exhibit B**) with details regarding the Mayflower load. The fact that Mayflower had a say in the qualification of Defendant Siembor as its agent was set forth in the status form (**Exhibit A**) produced with Defendants' initial discovery responses. Mayflower and Unigroup's notice of the underlying accident is reflected in the internal accident report (**Exhibit C**), produced with Defendant's supplemental discovery responses. Finally, the fact that Defendant Siembor was suspended from hauling loads for Mayflower following the accident, Mayflower's access to the dash camera portal, and Mayflower's role in setting safety standards were all testified to at the deposition of Defendant

Siembor on June 23, 2026. (**Exhibit E**). Conveniently, Plaintiff's motion omits the fact that Defendant Siembor was deposed prior to the deadline to add parties ran out on July 2, 2026. While the Armbruster 30(b)(6) deposition may have revealed greater detail on these topics, the facts needed to understand Mayflower's involvement were set forth long before the corporate representative testified and before the relevant deadline expired.

## II. Plaintiff failed to act diligently.

### i. No diligence in adding Mayflower to the lawsuit.

As set forth above, the information relevant to Mayflower's involvement in this litigation was available to Plaintiff as early as the Defendant's Answer filed October 22, 2025 – three hundred and eighty-seven (387) days ago. During that period, the parties have engaged in extensive discovery, including the exchange of written discovery, production of documents, the depositions of seven (7) fact witnesses, Defendants' identification of three (3) expert witnesses to be called at trial, and the depositions of two (2) of Defendants' experts. Further, the parties, their counsel, and a representative of Defendants' insurer appeared at the jointly scheduled meditation of this case in Columbia, South Carolina on August 13, 2026.

Even if the Court were to follow the Plaintiff's argument that he did not learn of the facts necessary to add Mayflower to this case until the deposition of the Armbruster 30(b)(6) representative on August 7, 2026, Plaintiff still waited ninety-eight (98) days to move this Court for an amendment. This is further proof that Plaintiff has not been diligent in adhering to the Court's scheduling order and now, at this late stage, wishes to undermine the dates proscribed by the Court by altering the nature of this case.

**ii. No diligence in pursuing discovery related to Mayflower.**

Plaintiff argues that a "lease agreement" between Defendant Armbruster and Mayflower has not been produced and therefore caused delay in his Motion to Amend. This argument attempts manufacture a discovery dispute where one does not exist. Primarily because this document has never been requested by Plaintiff. In his motion Plaintiff refers to Request for Production No. 22 as evidence that such an agreement had been requested. However, the Request asks for the production of "[c]opies of all leases, rental, or other agreements *regarding the commercial motor vehicle* involved in the Crash." (emphasis added). The Request is qualified to specifically relate to the tractor trailer that Defendant Siembor was operating, not all agreements that Defendant Armbruster may be a party to. No such lease or rental agreements exists with relation to that vehicle, so Defendant Armbruster produced the title to both the tractor and trailer. As such, Plaintiff raises this issue as a red herring to distract from his lack of diligence in prosecuting this matter.

Notwithstanding, at no time between Defendant's initial document production to today has Plaintiff notified Defendant Armbruster that its initial Response was deficient, filed a motion to compel related to Defendant's response, or served Defendant with supplemental discovery requests related to this "lease agreement." This issue is only further support that Plaintiff has failed to be diligent in pursuing what he frames as necessary discovery.

**III. The inclusion of Mayflower will not create a separate source of recovery.**

Per the agency agreement between Defendant Armbruster and Mayflower, Defendant Armbruster is to indemnify and hold harmless Mayflower against claims arising out of Defendant Armbruster's performance of the agreement – such as hauling household goods under Mayflower's DOT authority. Therefore, pursuant to this agreement, Defendant Armbruster's

available insurance policies and their associated limits, which have been produced and disclosed in full to Plaintiff, are controlling. Any money to be paid as the result of a judgment or settlement in this case, even if Mayflower is added to this action, will come from the limits of those policies. Defendants are inclined to believe that Plaintiff only seeks to include Mayflower to add a large well known corporate defendant to the verdict form as a target for jurors during deliberation. Therefore, adding Mayflower to this action would be futile, as its inclusion to this case will not make more or different money available to Plaintiff for recovery.

**IV. Defendants will suffer prejudice as a result of an amendment.**

The analysis under Fed. R. Civ. P. 16(b)(4) does not require the Court to consider whether the other parties to the case would be prejudiced by the Plaintiff's proposed amendment. Simply, his lack of diligence and disregard for the Court's deadlines is enough to deny is motion. However, it is worth the Court considering the prejudice that Defendants will sustain if this amendment is allowed. Particularly, the postponement of trial and increase in litigation expenses. Plaintiff's proposed amendment would necessarily require months of additional discovery including additional written discovery, more depositions, a second mediation, and modification of other deadlines in the Scheduling Order.

Defendants would note that while Plaintiff moves this Court for an order modifying the Scheduling Order, he fails to set forth in his motion what deadlines should be extended and for how long. Defendants are particularly concerned that Plaintiff is using the proposed amendment to the pleadings as subterfuge to reopen his opportunity to identify expert witnesses. While Defendants were diligent in adhering to the Court's deadlines by identifying its expert witnesses prior to the expiration of its deadline to do so, Plaintiff has failed to identify any expert witnesses. With an extended expert witness deadline, Plaintiff may seek to make up for this fact

by identifying experts in the fields of accident reconstruction, commercial trucking, life care planning, neurology, etc. – all while having gotten a first look at Defendants' identified experts, their written reports, and their testimony under oath. For these reasons, Defendants would suffer too great of prejudice to allow such a significant amendment and addition to the parties at this late stage in the case.

## CONCLUSION

For the foregoing reasons Defendants respectfully request that Plaintiff's Motion for Leave to Amend Complaint and Alter the Scheduling Order be denied as he cannot show good cause for such an amendment.

Respectfully submitted,

**SWEENY, WINGATE & BARROW, P.A.**

s/Jake M. Tillery
Mark S. Barrow Fed. I.D. No. 1220
Jake M. Tillery Fed. I.D. No. 14371
Sweeny, Wingate & Barrow, P.A.
Post Office Box 12129
Columbia, SC 29211
(803) 256-2233

**ATTORNEYS FOR DEFENDANTS**

Columbia, South Carolina

November 25, 2026