EXHIBIT B

MAYFLOWER TRANSIT, LLC
1 MAYFLOWER DRIVE
FENTON, MO 63026
PHONE (636) 305-4000

HOUSEHOLD GOODS
BILL OF LADING
U.S. DOT No. 125563

Mayflower

ORDER NUMBER: M0099-00260 5

AGENT - after-hours phone #

DRIVER - after-hours phone #

EST# [redacted]

**CONSIGNOR**

CUSTOMER: (SHIPPER) [redacted]
COMPANY (Associated With): [redacted]
ADDRESS: 124 CHAMPION GREEN APT.:
CITY, STATE, ZIP: GREENWOOD SC, 29649
ORIGIN PHONE: [redacted]
CONTACT: PHONE:

**CONSIGNEE**

CUSTOMER: (SHIPPER) [redacted]
ADDRESS: 1489 HUNTINGTON LANE APT.:
CITY, STATE, ZIP: CLEVELAND HTS OH, 44118
DESTINATION PHONE: [redacted]
CONTACT: PHONE:
FORM OF PAYMENT (per tariff): UNKNOWN

☐ C.O.D. ☐ GOV. ☒ NAT. ACCT. #: M81300-074

CHANGE in FORM of PAYMENT: (per tariff) ☐ Cash ☐ Traveler's Check ☐ Credit Card ☐ Cert. Check ☐ Bank Check (Customer's Initials)

**BILL TO**

BILL TO: [redacted]
STREET ADDRESS: [redacted]
CITY, STATE, ZIP: [redacted] [redacted]
ATTN: MOVING SERVICES AUD P.O. NO.: 3636928/8634768

**NOTIFY**

NOTIFY IN CASE OF: ☐ DELAY ☐ CHARGES
NAME:
STREET ADDRESS:
CITY, STATE, ZIP:
PHONE:
E-MAIL: jessicajames@eaton.com

| CONTRACT NO. | TARIFF | SECTION | EXCEPTION | MILES |
|---|---|---|---|---|
| R198 | | 3 | ET | |

☐ EXCLUSIVE USE OF A ____ CU. FT. ORDERED (MIN. 1400 CU. FT.)
☐ SPACE RESERVATION ____ CU. FT. ORDERED (MIN 400 CU. FT.)

CUSTOMER'S SIGNATURE AT ORIGIN: X

| PACK DATES Start | PACK DATES Finish | AGREED LOAD SPREAD Start | AGREED LOAD SPREAD Finish | AGREED DELIVERY SPREAD Start | AGREED DELIVERY SPREAD Finish |
|---|---|---|---|---|---|
| 08/05/2025 | | 08/06/2025 | 08/06/2025 | 08/09/2025 | 08/14/2025 |

GUARANTEED PICK-UP and DELIVERY DATES - PER TARIFF

** VOLUME / WEIGHT CONVERSION = LBS. PER CUBIC FOOT **

CUSTOMER REQUESTED REWEIGH ☐ YES ☐ NO
CUSTOMER WAIVES RIGHT to OBSERVE REWEIGH ☐ YES ☐ NO

**VALUATION**

## CUSTOMER DECLARATION of VALUE

THIS IS A CONTRACT LEVEL OF CARRIER LIABILITY - IT IS NOT INSURANCE

If any article is lost, destroyed, or damaged while in your mover's custody, your mover's liability is limited to the actual weight of the lost, destroyed, or damaged article multiplied by $ 2.50 per pound per article. This liability level is provided at no charge.

Under the Released Level of Liability, your shipment will be transported based on a value of $ 2.50 per pound multiplied by the actual weight of the shipment.

Your signature is REQUIRED here: I acknowledge that for my shipment, I will receive the Released Level of Liability of $ 2.50 per pound per article.

X

(CUSTOMER SIGNATURE AT ORIGIN) (DATE)

**EXTRAORDINARY (UNUSUAL) VALUE ARTICLE DECLARATION:**

I acknowledge that I have prepared and retained a copy of the **"Inventory of Items Valued in Excess of $100 Per Pound Per Article"** that are included in my shipment and that I have given a copy of this inventory to the mover's representative. I also acknowledge that the mover's liability for loss of or damage to any article valued in excess of $100 per pound will be limited to $100 per pound for each pound of such lost or damaged article (based on actual article's weight), not to exceed the declared value of the entire shipment, unless I have specifically identified such article for which a claim for loss or damage is made on the attached inventory.

x

**TOTAL:** $ 35,637.97

**(Unless a New Estimate / Order for Service is Executed)**

Customer acknowledges receipt of and accepts this Bill of Lading, including all terms written and printed, stamped or typed on **all pages** (front and/or back) of this form.

X
(CUSTOMER'S SIGNATURE AT ORIGIN) (DATE)

**PAYMENT ACKNOWLEDGEMENT**

$ BY
Payment Received (Date)

$ BY
Payment Received (Date)

**DELIVERY ACKNOWLEDGEMENT**

Shipment was received in apparent good condition except as noted on inventory and services ordered were performed.

X
Received by Customer's Signature (Date)

X
Delivered by Van Operator's Signature Driver Code (Date)

**STORAGE ACKNOWLEDGEMENT**

Received for Storage:
(Warehouse)

BY
Warehouseman's Signature (Date) Control Number



2025-08-01 13.59

BUTLER-ARMBRUSTER 000086



1 - COPY TO CUSTOMER AT ORIGIN 1 - COPY TO CARRIER 1 - COPY TO CUSTOMER AT DESTINATION

EXHIBIT B

MAYFLOWER TRANSIT, LLC
1 MAYFLOWER DRIVE
FENTON, MO 63026
PHONE (636) 305-4000

# HOUSEHOLD GOODS BILL OF LADING

U.S. DOT No. 125563

Mayflower

ORDER NUMBER: M0099-00260 5

CUSTOMER: [redacted]

EST# [redacted]

**AGENT**

| AGENT | AGENT NBR | NAME | ADDRESS | CITY, STATE, ZIP | PHONE |
|---|---|---|---|---|---|
| BOOKER | M0099 | ARMBRUSTER MOVING & STO | 2800 CENTER RD. | BRUNSWICK OH 44212-2332 | 330-220-6400 |
| ORIGIN | M0099 | ARMBRUSTER MOVING & STO | 2800 CENTER RD. | BRUNSWICK OH 44212-2332 | 330-220-6400 |
| DESTINATION | M0099 | ARMBRUSTER MOVING & STO | 2800 CENTER RD. | BRUNSWICK OH 44212-2332 | 330-220-6400 |

**HAULING**

| DRIVER I.D. | DRIVER NAME (*please print*) | VAN NO. | PICK-UP DATE | FROM RES. | FROM WHSE. | DELIVERY DATE | TO RES. | TO WHSE. |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## DESCRIPTION OF SERVICES ORDERED

**EXTRA STOPS**

| PICKUP/DELIVERY | ADDRESS~APARTMENT NUMBER | CITY, STATE, ZIP | PHONE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**AUTO**

| AUTO | YEAR | MAKE | MODEL |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |

| CUBIC FEET | MINIMUM WEIGHT | WEIGHT ADDITIVE | AUTO WEIGHT | HHGD WEIGHT | TOTAL WEIGHT |
|---|---|---|---|---|---|
| 1,101 | 3,400 | | | 7,435 | 7,435 |

TOTAL TRANSPORTATION $ 14,721.23

VALUATION LEVEL SELECTED: RELEASED VALUE $2.50/LB

VALUATION COST $

**PACKING AND UNPACKING**

| CARTON DESCRIPTION | PACKING QUANTITY | PACKING PER EACH | PACKING TOTAL | UNPACKING QUANTITY | UNPACKING PER EACH | UNPACKING TOTAL |
|---|---|---|---|---|---|---|
| FULL PACKING | 74.35 | 104.98 | 7,805.26 | | | |
| FULL UNPACKING | | | | 74.35 | 27.31 | **2,030.50** |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | TOTAL PACKING | | 7,805.26 | TOTAL UNPACKING | | 2,030.50 |
| | LBS. X $ | | | CWT. = $ | | |

TOTAL PACKING & UNPACKING $ 9,835.76



2025-08-01 13.59

BUTLER-ARMBRUSTER 000087

EXHIBIT B

MAYFLOWER TRANSIT, LLC
1 MAYFLOWER DRIVE
FENTON, MO 63026
PHONE (636) 305-4000

HOUSEHOLD GOODS
BILL OF LADING
U.S. DOT No. 125563

Mayflower

ORDER NUMBER: M0099-00260 5

EST#: M0099-NELJESS

CUSTOMER: [redacted]

ACCESSORIAL SERVICES

| DESCRIPTION | | O/D | RATE | CHARGE | EXCLUDED FROM DISCOUNT (***) |
|---|---|---|---|---|---|
| FUEL SURCHARGE | 14721.23@ | | .1300 | 1,913.76 | |
| ORIG SERV CHRG | 7435 | O | 8.49 | 631.23 | |
| DEST SERV CHRG | 7435 | D | 14.93 | 1,110.05 | |
| INS. RELATED REVE | 14721.23@ | | .0400 | 588.85 | |
| TV - 40"/OVER | 1@ | O | 356.34 | 356.34 | |
| AUX SERV 0-25 MI | 7435 | D | 3,941.00 | 3,941.00 | |
| EXTRA LABOR | 2 @ 1.00 @ | O | 133.64 | 267.28 | |
| REMOTE LOCATION | 1@ | O | 214.47 | 214.47 | |
| | | | | | |
| | | | | | |

PURPOSE : Inspect/unpack 20 PBOs

TOTAL ADDITIONAL SERVICES $ 9,022.98

3RD PARTY / ADVANCE CHARGES

| DESCRIPTION | O/D | CHARGE | EXCLUDED FROM DISCOUNT (***) |
|---|---|---|---|
| ADV 3RD PARTY CHRGS | O | 831.00 | *** |
| ADV 3RD PARTY CHRGS | D | 1,227.00 | *** |
| | | | |

** MUST BE SUPPORTED BY INVOICE **

TOTAL 3rd PARTY & ADVANCE CHARGES $ 2,058.00

PURPOSE : 3rd party costs | 3rd party costs

STORAGE

| ORIGIN SIT | SIT PICKUP MILES | WEIGHT | | RATE | CHARGE | DISC |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| 1ST DAY | DATE IN: | | | | | |
| 2ND DAY | TO | NO. DAYS | | | | |
| EXTENDED VALUATION | | | | | | |
| WAREHOUSE HANDLING | | | | | | |

| DESTINATION SIT | SIT DELIVERY MILES | WEIGHT | | RATE | CHARGE | DISC |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| 1ST DAY | DATE IN: | | | | | |
| 2ND DAY | TO | NO. DAYS | | | | |
| EXTENDED VALUATION | | | | | | |
| WAREHOUSE HANDLING | | | | | | |

NET TOTAL STORAGE $

NET TOTAL: $ 35,637.97

TERMS

1. All terms written, and printed, stamped, or typed on **all pages** (front or back) of this form, are agreed to by both parties.
2. If the carrier extends credit by agreeing to bill an employer or other party, and in the event that any or all of the charges are not paid, the owner of the goods and/or beneficiary of the services acknowledges he remains primarily liable for payment.
3. **COLLECT SHIPMENTS:** Unless other payment arrangements are made with the carrier in writing signed by the carrier, this shipment is a collect shipment. **Forms of payment honored at delivery on Collect shipments (as provided in carrier's tariff) in U.S. funds are Cash, Certified Check, Traveler's Check, Bank Check (drawn by a bank on itself), and/or specific PRE-AUTHORIZED Credit Card(s).** All drafts must be payable to the carrier. All charges are subject to audit, and if necessary will be corrected by refund or additional billing or collect shipments. If total charges for services exceed the amount of the non-binding estimate by more than ten percent, the carrier must relinquish possession of your shipment upon payment of the estimated amount plus 10%. You are obligated to pay any balance of the total charges upon receipt of carrier's invoice. The charges for services or quantities that are in addition to those collected at delivery must be presented to Customer within 15 days of the date of delivery (*or if the carrier lacks sufficient information to compute the charges they must be presented to the Customer within 15 days of the date when sufficient information becomes available)* and shall be due within 30 days following presentation of the freight bill.
4. This shipment is based on a **Non-Binding** estimate between the Carrier and the Customer.
5. The total estimate price includes only the articles and services listed. It is **NOT** a guarantee that actual charges will not exceed or be lower than what is shown on the estimate.
6. The Customer agrees that title to all packing materials and other property sold to Customer passes to Customer prior to the transportation of such property for the Customer by carrier.
7. In the event storage-in-transit services are **not** estimated but are provided, the cost of these services will be in addition to the amount stated. Such services and applicable charges will be based upon the actual weight of the goods stored in transit for actual days in storage. An additional valuation charge may apply on shipments that are provided Full Value Protection service.
8. The Customer agrees that the carrier shall transport the goods and effects tendered by the Customer subject to the preceding.
9. Customer's express waiver of the right to have Mayflower conduct a physical survey of the shipment is hereby incorporated into this Bill of Lading by reference and by signing below. Customer reaffirms acceptance of Mayflower's estimate of charges based on its virtual survey along with any other related services deemed necessary by Mayflower to complete transportation of the shipment.

SPECIAL INSTRUCTIONS / COMMENTS / REMARKS :



2025-08-01 13.59

BUTLER-ARMBRUSTER 000088



1 - COPY TO CUSTOMER AT ORIGIN 1 - COPY TO CARRIER 1 - COPY TO CUSTOMER AT DESTINATION

MAYFLOWER TRANSIT, LLC
1 MAYFLOWER DRIVE
FENTON, MO 63026
PHONE (636) 305-4000

HOUSEHOLD GOODS
BILL OF LADING
U.S. DOT No. 125563

Mayflower

ORDER NUMBER
M0099-00260 5

CUSTOMER: [redacted]

EST# [redacted]

## CONTRACT TERMS and CONDITIONS of HOUSEHOLD GOODS BILL of LADING

**Notice of Availability of Published Tariff**

Carrier publishes tariffs, which set forth the terms, conditions and prices for the transportation services it provides. The applicable tariff provisions are incorporated herein by reference. Incorporated provisions include, but are not limited to: **(1)** Establishing the limitation of carrier's liability, the principal features of which are described in the Valuation section of this Bill of Lading; **(2)** Setting the time period for filing claims, the principal features of which are described in Section 6 hereof; and **(3)** Reserving the carrier's right to charge additional amounts for additional services performed and to base charges on the exact weight of the goods transported. For more information, please see the terms and conditions printed herein and the carrier's booklet "Your Rights and Responsibilities When You Move" and the "Ready To Move" brochure. The tariff, including the written and electronic components thereof, is made a part of the Bill of Lading. The written component of the tariff and the rates and charges contained in the electronic component of the tariff may be viewed and printed at the following internet Web Address: **www.mayflower.com**. The tariff may also be inspected at the offices of the carrier or its agents. On request, the carrier will furnish a copy of any tariff provision governing the shipment contained in the written component of the tariff and a copy of the rates and charges calculated by the electronic component of the tariff for the shipment.

Carrier's currently effective applicable tariffs, all Inventories prepared in conjunction with this Bill of Lading, any applicable National Account Contract Agreements and the Estimate/Order for Service prepared in advance of shipment are hereby incorporated by reference. These documents, together with this Bill of Lading constitute the contractual documents governing shipper's move, and include but are not limited to the terms and conditions set forth below. In the event of any conflict between the terms of the Estimate/Order for Service and Bill of Lading, the Bill of Lading shall control. Any specific terms set forth in a National Account Contract Agreement shall supersede any inconsistent terms in the other documents.

This contract is subject to all the rules, regulations, rates and charges in carrier's currently effective applicable tariffs including, but not limited to, the following terms and conditions:

**SECTION 1**: The carrier or party in possession shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage-in-transit EXCEPT loss, damage or delay caused by or resulting:

(a) From an act, omission or order of shipper;

(b) From defect or inherent vice of the article, including susceptibility to damage because of mechanical malfunction and/or atmospheric conditions such as temperature and humidity or changes therein;

(c) From (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (A) by any government or sovereign power, or by any authority maintaining or using military, naval or air forces; or (B) by military, naval or air forces; or (C) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence; (4) seizure or destruction under quarantine or customs regulations; (5) confiscation by order of any government or public authority; or (6) risks of contraband or illegal transportation or trade.

(d) From terrorist activity, including action in hindering or defending against an actual or expected terrorist activity. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. The term "terrorist activity" means any activity which is unlawful under the laws of the United States or any State and which involves any of the following: (1) the hijacking or sabotage of any conveyance (including an aircraft, vessel, cab, truck, van, trailer, container or vehicle) or warehouse or other building; (2) the seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained; (3) an assassination; (4) the use of any (A) biological agent, chemical agent, or nuclear weapon or device, or (B) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property; or (5) a threat, attempt, or conspiracy to do any of the foregoing.

(e) From delay caused by strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder, and from loss or damage when carrier, after notice to shipper or consignee of a potential risk of loss or damage to the shipment from such causes, is instructed by the shipper to proceed with such transportation and/or delivery, notwithstanding such risk.

(f) From Acts of God.

SUBJECT, in addition to the foregoing, to the further following limitations on the carrier's or the party's in possession liability:

The carrier's or the party's in possession maximum liability shall be either:

(1) The value declared by the shipper, which may not be less than $6,000 or $6.00 per pound multiplied by the actual weight of the shipment, in pounds, whichever is greater, or

(2) The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has waived Full Value Protection and released the shipment to the carrier, in writing, with liability limited to sixty (60) cents per pound per article.

(3) Further, for shipments released at Full Value Protection, a shipper's failure to notify the carrier in writing that an article or articles having a value that exceeds $100 per pound will be included in the shipment will restrict the carrier's maximum liability to $100 per pound of any lost or damaged article (based on actual weight), NOT to exceed the declared value of the entire shipment.

Such valuation is the maximum carrier liability under published tariffs and **is not insurance**, as that term is used under the McCarran-Ferguson Act, **15 U.S.C. §§ 1011-1015**.

**SECTION 2**: The carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry, or caused by breakdown or mechanical defect of vehicles or equipment, or from any cause other than negligence of the carrier; nor shall the carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

**SECTION 3:** Shipper's, consignor's and/or consignee's liability to carrier shall include the following:

(a) The shipper, (individual or commercial) and consignor upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment. The extension of credit to either shipper, consignor and/or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges. The joint and several liability of the shipper and consignee as set forth in this Section 3 (a) is absolute, and no prior or subsequent course of dealing among the shipper, carrier and/or consignee (including, but not limited to, the course of dealing pertaining to billing and collection of shipping charges) shall be construed as limiting, impairing, waiving or discharging such joint and several liability.

(b) Shipper and/or consignor represent that no explosives, hazardous materials, and/or dangerous articles or goods shall be contained in shipment. However, the shipper and/or consignor shall indemnify carrier against any loss or damage caused by the negligent or intentional inclusion in the shipment of explosives or dangerous articles or goods therein.

**SECTION 4**: If for any reason other than the fault of carrier, delivery cannot be made at address shown on the face hereof, or at any changed address of which carrier has been notified, carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, at the cost of the owner, and subject to a lien for all accrued tariff, contract and other lawful charges.

**SECTION 5**: If shipment is refused by consignee at destination, or if shipper, consignee or owner of property fails to receive or claim it within fifteen (15) days after written notice by United States mail addressed to shipper and consignee at post office addresses shown on face hereof, or if shipper fails or refuses to pay lawfully applicable charges in accordance with carrier's applicable tariff, carrier may sell the property at its option, either **(a)** upon notice in the manner authorized by law, or **(b)** at public auction to highest bidder for cash at a public sale to be held at a time and place named by carrier, thirty (30) days notice of which sale shall have been given in writing to shipper and consignee, and there shall have been published at least once a week for two consecutive weeks in a newspaper of general circulation at or near the place of sale, a notice thereof containing a description of the property as described in the Bill of Lading, and the names of the consignor and consignee. The proceeds of any sale shall be applied toward payment of lawful tariff charges applicable to shipment and toward expenses of notice, advertising and sale, and of storing, caring for and maintaining property prior to sale, and the balance if any shall be paid to owner of property; PROVIDED that any perishable articles contained in said shipment may be sold at public or private sale without such notices, if, in the opinion of carrier, such action is necessary to prevent deterioration or further deterioration.

**SECTION 6:** As a condition precedent to recovery, a written claim for any loss, damage or injury must be received within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make the delivery, then within nine (9) months after a reasonable time for delivery has elapsed. In case of delay, customer must file a written demand for payment of the fixed settlement amount with carrier within 30-days from the date of the delivery. Suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not received or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.